UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RODNEY COLLEY, *et al.* (on behalf
of themselves and all others similarly situated),

                                     Case No. 1:16-cv-918

      Plaintiffs,

vs.                                    Judge Timothy S. Black

PROCTER & GAMBLE CO.
D/B/A OLD SPICE,

      Defendant.

**ORDER GRANTING**
**DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS AND**
**MOTION TO DISMISS (Doc. 11)**

This civil action is before the Court on Defendant P&G's motion to strike class allegations and dismiss numerous counts of the amended complaint for failure to state a claim (Doc. 11),[1] and the parties' responsive memoranda (Docs. 21, 26).

## I.      BACKGROUND

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to the Plaintiffs; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

This consumer class action has been brought by individuals who allegedly suffered damages after purchasing and applying the Old Spice deodorant manufactured

---

[1] The motion also contained a request to transfer venue from Columbus to Cincinnati, which transfer was granted by Judge Watson on September 12, 2016. (Doc. 27). However, Judge Watson did not address the requests to strike class allegations and dismiss counts for failure to state a claim. (*Id.*)

and sold by P&G.[2]  Plaintiffs maintain that the adverse health effects constitute more than the simple "rash" or "irritation" allegedly warned of by P&G on its product label. Plaintiffs maintain that P&G's failure to warn consumers that using its product could potentially result in chemical burns, skin peeling, open scabbing wounds, and permanent scarring, *etc.* has caused Plaintiffs not only to suffer these adverse health effects, but to also incur economic damages by not receiving the full benefit and use of the product.

While the amended complaint lists 13 separate Old Spice deodorant products as allegedly causing injury to consumers, Plaintiffs do not identify what Old Spice product any particular Plaintiff used.  (Doc. 8 at ¶ 6).  Instead, Plaintiffs allege generically that each purchased "Old Spice Deodorants."  (*Id.* at ¶¶ 3, 8).  Likewise, Plaintiffs allege collectively that the use of Old Spice deodorant products caused them "burning, rashes, irritation, scarring, discoloration, scabbing, peeling skin, and/or other injury."  (*Id.* at ¶¶ 8-11).  However, the amended complaint does not allege which Plaintiffs (or how many Plaintiffs) experienced which symptoms.[3]  The amended complaint does include some photographs of alleged injury—but each of the photographs reflects different types of reactions, with different symptoms, and different degrees of severity.

---

[2] Old Spice is one of the best-known and widely-used brands of deodorant in the United States. Since 2012, P&G has sold hundreds of millions of sticks of Old Spice deodorant across the country.

[3] Plaintiffs allege that "hundreds, if not thousands" of consumers may have been injured.  (Doc. 8 at ¶ 22).  P&G claims that millions of satisfied consumers use Old Spice brand deodorants every day to meet their personal hygiene and grooming needs and do not experience problems of the types alleged in the amended complaint.  Thus, Plaintiffs' proposed class would consist of millions of satisfied customers with no complaints, no alleged injuries, and no damages.

Plaintiffs ask this Court to certify a nationwide class and 44 state subclasses of every person who purchased one of the 13 listed Old Spice deodorant products since 2012. Plaintiffs proposed nationwide class is defined as "persons in the United States who purchased for their own use Old Spice deodorant which was manufactured, produced, or supplied by Defendant between 2012 to the present." (Doc. 8 at ¶ 17). Plaintiffs also propose 44 state subclasses that are defined as all persons in the individual state who meet the same definition as the proposed nationwide class. (*Id.* at ¶¶ 17, 47-53).[4]

Plaintiffs assert nationwide claims for breach of express warranty, breach of implied warranty of merchantability, breach of warranty under the Magnusson-Moss Warranty Act, unjust enrichment, negligence/gross negligence, and certain common law product liability claims. (Doc. 8 at ¶¶ 29-74, 538-560). Plaintiffs assert state statutory consumer protection claims on behalf of 35 separate state subclasses. (*Id.* at ¶¶ 75-537). In addition to the nationwide product liability claims, Plaintiffs assert statutory product liability claims on behalf of 23 separate state subclasses under their respective state statutes. (*Id.* at ¶¶ 561-840). Plaintiffs do not allege or suggest how these claims on behalf of state subclasses under specific product liability statutes would relate to the product liability and other theories asserted on behalf of the putative nationwide class. Based on these asserted causes of action, Plaintiffs demand a wide range of relief against

---

[4] Plaintiffs did not define a subclass for the following states: Idaho, Montana, Rhode Island, South Dakota, Vermont, and Wyoming.

P&G, including compensatory damages, punitive damages, and various forms of injunctive relief.  (*Id.* at ¶¶ 176-79).

P&G argues that the Court should strike the class claims because this case is a collection of individual product liability claims which are unsuited for class treatment. Plaintiffs argue that this case is at the earliest stages and that they have not yet been afforded the opportunity to conduct the necessary discovery to support their allegations and class status.

## II.     STANDARD OF REVIEW

### A.   Motion to Strike

"The party seeking the class certification bears the burden of proof."  *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996).  "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011).

Striking deficient class allegations comports with Rule 23's directive that courts determine whether a class may be certified "[a]t an early practicable time."  Fed. R. Civ. P. 23(c)(1)(A).  A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011).  A court may properly strike class allegations prior to discovery where discovery would not have "alter[ed] the central defect in th[e] class claim."  *Id.* at 949 (affirming the district court's judgment striking class allegations and

dismissing a lawsuit prior to discovery, finding that the defect in the class action at issue involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering."). "This Court has specifically recognized its authority to strike class allegations prior to the close of discovery when (1) the complaint itself demonstrates the requirements for maintaining a class action cannot be met, and (2) further discovery will not alter the central defect in the class claim." *Amerine v. Ocwen Loan Servicing LLC*, No. 2:14cv15, 2015 U.S. Dist. LEXIS 178248, at *5 (S.D. Ohio Mar. 31, 2015). *See, e,g., Rikos v. Procter & Gamble Co.,* No. 1:11cv226, 2012 U.S. Dist. LEXIS 11564, at *4 (S.D. Ohio Feb. 28, 2012) (striking class allegations where the class could not be certified as defined and "no proffered or potential factual development offer[ed] any hope of altering that conclusion.").

However, "courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Geary v. Green Tree Servicing, LLC*, No. 2:14cv522, 2015 U.S. Dist. LEXIS 35059, at *41-42 (S.D. Ohio Mar. 20, 2015). Generally, "a district court should defer decision on class certification issues and allow discovery 'if the existing record is inadequate for resolving the relevant issues.'" *Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp. 2d 932, 942 (M.D. Ten. 2010).

### B.    Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'"  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (*citing* Fed. Rule Civ. P. 8(a)(2)).

## III.   ANALYSIS

### A.   Motion to Strike

#### *1.   Personal Injury and Medical Related Claims*

First, P&G argues that Plaintiffs' personal injury and medical-related claims are not suitable for class treatment. Plaintiffs' class allegations are premised on the existence of "adverse health effects including, but not limited to: severe burning, rashes, irritation, scarring, discoloration, scabbing, peeling skin, and/or other injury." (Doc. 8 at ¶ 1). In an effort to recover for these alleged injuries, the amended complaint asserts claims on behalf of a putative nationwide class for products liability, failure to warn, negligence and gross negligence, as well as state-specific products liability claims under 23 different state statutes.

The Supreme Court has held that these types of claims and alleged injuries are inherently unsuited for class treatment because they are "likely to present 'significant questions, not only of damages but of liability and defenses of liability… affecting the [individual class members] in different ways.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (quoting Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment and affirming a circuit court's rejection of a "sprawling" nationwide class of personal injury product liability claims, and requiring "caution" when considering class

certification of mass torts). In fact, one district court recently observed that "no federal appellate court has approved a nationwide personal injury, product liability or medical monitoring class." *Durocher v. NCAA*, No. 1:13cv1570, 2015 U.S. Dist. LEXIS 41110, at *33-34, n. 3 (S.D. Ind. Mar. 31, 2015) (collecting cases and granting a motion to strike personal injury class allegations).

Plaintiffs' claims seeking money damages for personal injury and product liability causes of action are by their nature fact intensive and state law-specific. A multitude of individual factual and legal issues preclude findings of commonality, predominance, cohesiveness, typicality, and superiority. These impediments to class certification are multiplied because Plaintiffs seek to assert these already fact intensive claims under the substantive law of many different states. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743 (5th Cir. 1996) ("proliferation of disparate factual and legal issues is compounded exponentially" when law of multiple jurisdictions apply).

Furthermore, a class definition limited to only the small number of consumers who suffered physical injury caused by Old Spice deodorant products is not viable because: (1) it would amount to an impermissible "fail-safe" class; and (2) it would not be ascertainable by reference to objective criteria. A "fail-safe" class "includes only those who are entitled to relief," *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011), and therefore "cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). "Such a class is prohibited because it would allow putative class members to seek a remedy but not be

bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Randleman*, 646 F.3d at 352.

A corollary to the prohibition on a fail-safe class is that the class must be defined by "objective criteria" that "are not necessarily determinative of the ultimate issue of liability." *Young*, 693 F.3d at 538-39.  Defining membership in Plaintiffs' putative class by injury and causation would require a mini-hearing on the merits of each case and ultimately redefine the class as those "entitled to relief." *Sherrod v. Enigma Software Group USA*, No. 2:13cv36, 2016 U.S. Dist. LEXIS 179, at *9 (S.D. Ohio Jan. 4, 2016) (striking fail-safe class).  Such a class would be both "fail-safe" and defined by non-objective criteria.  *Luppe v. Cheswick Generating Station*, No. 12-929, 2015 U.S. Dist. LEXIS 9791, at *11 (W.D. Pa. Jan. 28, 2015) (striking class definition as both "fail-safe" and "unascertainable" because it would "most certainly require mini-hearings into the particular facts of each purported class members's situation in order to determine ultimate issues of liability-damage and causation").

### 2. Individual Factual and Legal Issues

The court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. P&G argues that in order to adjudicate potential class members' claims and P&G defenses, this Court will be required to resolve innumerable facts individual to each class member under a wide and varying array of legal standards across 50 states.  P&G

maintains that the individualized nature of these issues precludes commonality and predominance.

### a. Individualized questions of fact

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman*, 646 F.3d at 353. "Where many individual inquires are necessary, a class action is not a superior form of adjudication." *Young*, 693 F.3d at 545.

Plaintiffs argue that this case meets the predominance requirement because it is similar to *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015). However, in *Rikos*, the Sixth Circuit found that "[u]nlike the Plaintiff in *American Medical Systems*, Plaintiffs here do not take aim at a panoply of P&G products. They focus their attention on Align [one product]. Plaintiffs all purchased Align because it allegedly promoted digestive health. That is the only reason to buy Align." *Id.* at 511. Like in *Rikos*, Plaintiffs argue that they focus only on one consumer product, the Old Spice deodorant brand, which Plaintiffs purchase for only one reason, to apply to their underarms for good hygiene purposes.

However, Plaintiffs theory of liability in *Rikos* was that Align, advertised as a probiotic nutritional supplement, was "entirely ineffective" for any and all consumers. 799 F.3d at 520. The "common question" shared by each putative class member's claims was "whether Align…does not yield benefits to anyone." *Id.* at 506. Class certification was affirmed because "[t]hat common question will yield a common answer for the entire

class that goes to the heart of whether P&G will be found liable under the relevant false-advertising laws." *Id.* at 508-09. Thus, *Rikos* turned on a theory of liability "that Align is worthless" for everyone who bought the product, which the court held could be proven through class-wide scientific proof and establish a common injury for all putative class members. *Id.* at 520.

Here, Plaintiffs do not contend that Old Spice deodorant products fail to provide deodorant benefits to any purchaser. Instead, Plaintiffs allege personal injury, which is not a class-wide issue. In fact, the amended complaint acknowledges, and Plaintiffs do not dispute, that only a small number of consumers who purchased Old Spice deodorant products—"hundreds if not thousands" from a putative class of potentially tens of millions—are alleged to have suffered physical injury. (Doc. 8 at ¶ 22).[5]

Plaintiffs' failure to warn claims sound in product liability. Not only do individual issues predominate, but product liability claims are typically limited under state law to relief for personal injury and physical harm. Consistent with these legal constraints, the amended complaint disavows a theory of purely economic loss, expressly stating that "Plaintiffs do not allege negligence [and strict products liability] claims based on an injury to the Old Spice Deodorants themselves; Plaintiffs' negligence [and strict products liability] claims relate to injuries that they and members of the Nationwide Class suffered[.]" (Doc. 8 at ¶¶ 549, 560).

---

[5] Since the proposed classes are comprised overwhelmingly of uninjured members, Plaintiffs cannot rely on cases permitting certification where "the class includes a *de minimis* number of uninjured parties." *Astrazeneca AB v. UFCW (In re Nexium Antitrust Litig.)*, 777 F.3d 9, 14, 31 (1st Cir. 2015) (permitting class certification where "the vast majority of class members were probably injured").

However, the *mass tort cases* on which Plaintiffs rely do not apply to their *products liability claims*, which are treated differently than mass torts for class purposes. "[A] mass tort action arising out of a single accident or single course of conduct" is distinguishable from "products liability" claims where "the factual and legal issues often do differ dramatically from individual to individual because there is no common cause of injury." *In re Am. Med. Sys.*, 75 F.3d 1069, 1084 (6th Cir. 1996). In *American Medical Systems*, the court de-certified the personal injury/products liability class because:

> In products liability actions…individual issues may outnumber common issues. No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case.

*Id.* at 1084-1085.

The liability of individual class members will turn on the litany of specific factual inquiries, including whether and how class members were physically injured, how putative class members applied the product, the frequency of use, whether they use other products, individual medical issues and sensitivities, conditions such as previously broken or irritated skin, armpit shaving habits, and other factors unique to each individual. Accordingly, "[n]o one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant," and P&G's defenses "depend on facts peculiar to each plaintiff's case." *Am Med. Sys.*, 75 F.3d at 1085. Moreover, based on Plaintiffs allegations, only a fraction of a fraction of a

percent of putative class members actually experienced irritation or other physical effects that they attribute to Old Spice products. (Doc. 8 at ¶ 22). Plaintiffs bring class claims relating to thirteen Old Spice deodorant products—each of which has a distinct fragrance composition. Accordingly, Plaintiffs have not and cannot identify a "single course of conduct" like those in mass tort cases. *Amchem Prods., Inc.*, 521 U.S. at 624 (predominance not met where individuals were "exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods [and] [s]ome…suffer no physical injury").

Therefore, the Court finds that individualized questions of fact predominate.

### b. Individualized questions of law

A class action is improper where the "laws of the State where each injury took place would govern the [individual] claims," and those laws "vary in material ways." *Pilgrim*, 660 F.3d at 947. Regardless of whether they are described as subclasses, this Court is faced with individual legal standards and manageability problems because the proposed class claims would require the application of the laws of at least 42 different states to different class members.

Plaintiffs attempt to distinguish *Pilgrim* by arguing that the "critical defect" in that case was the absence of separate state subclasses that would allow for application of different state laws to individual class members. However, the Sixth Circuit acknowledged in *Pilgrim* that different state laws would apply to different class members, which is why the Sixth Circuit held in *Pilgrim* that class treatment was inappropriate:

> To demonstrate predominance, parties seeking class recognition must
> show that 'questions of law or fact common to class members
> predominate over any questions affecting only individual members.'
> Fed. R. Civ. P. 23(b)(3).  The plaintiffs could not do that here, the
> district court held, because each class member's claim would be
> governed by the law of the State in which he made the challenged
> purchase, and the differences between the consumer-protection
> laws of the many affected States would case a long shadow over any
> common issues of fact plaintiffs might establish.  That judgment is
> sound and far from an abuse of discretion for three basic reasons.
> Reason one: different laws would govern the class members' claims.
> As the parties agree (quite properly, we might add), Ohio's choice-of-
> law rules determine which consumer-protection laws cover these
> claims. *** Gauged by these factors, the consumer-protection laws of
> the potential class members' home States will govern their claims.

660 F.3d at 946.  Accordingly, it was not the absence of state subclasses that doomed

class allegations in *Pilgrim* but rather "the key defect that the claims must be resolved

under different legal standards."  *Id.* at 948.[6]

Furthermore, Plaintiffs make no effort to actually propose any workable groups.[7]

"The burden of showing uniformity or the existence of only a small number of applicable

standards (that is, 'groupability') among the laws of the fifty states rests squarely with the

plaintiffs."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004).  Moreover,

---

[6] Plaintiffs cite *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), in support of their contention
that 42 disparate state subclasses should proceed as one action.  However, *Ortiz* did not address
or condone the joining of dozens of individual state subclasses.  Instead, it recognized the
conflicts that arise from lumping together putative class members with distinct injuries.  It was
"obvious," according to the Court, that a single class divided between plaintiffs with "present
and future claims" including "some involving no physical injury" "requires division into
homogenous subclasses…with separate representation."  *Id.* at 856.

[7] Plaintiffs argue that they should be afforded the opportunity to provide the court with its
grouping analysis of the various consumer, product liability, warranty and unjust enrichment law
at the class certification stage after discovery is completed.

courts routinely recognize that the grouping of many state subclasses is unworkable where they would be further subdivided based on individual factual distinctions and product variations, as Plaintiffs' claims require. *See, e.g., Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1183 (11th Cir. 2010) (rejecting proposed thirty-six subclasses because "when the two sets of six subclasses are overlaid upon one another, 'the proliferation of disparate factual and legal issues is compounded exponentially'").

Accordingly, the Court finds that individual questions of law predominate.

### 3. *Unjust enrichment*

Varying state laws preclude Plaintiffs from pursuing an unjust enrichment claim on behalf of a nationwide class. *See, e.g., Cowit v. Citimortgage, Inc.*, No. 1:12cv869, 2013 U.S. Dist. LEXIS 32219, at *21 (S.D. Ohio Mar. 8, 2013) (striking nationwide class allegations for unjust enrichment and other claims "due to the considerable variation in the state laws governing them"). Some states do not recognize unjust enrichment as an independent cause of action,[8] and many states require a plaintiff to demonstrate that he

---

[8] *See, e.g., Baxter v. PNC Bank Nat'l Ass'n,* 541 F. App'x 395, 397 n. 2 (5th Cir. 2013) ("Texas courts have not recognized a claim for unjust enrichment as an independent cause of action"); *Blystra v. Fiber Tech Group, Inc.*, 407 F. Supp. 2d 636, 644 n. 11 (D.N.J. 2005) (applying New Jersey law) ("[T]he Court will treat the Plaintiffs' unjust enrichment claim as subsumed by their other tort claims, not as an independent cause of action"); *Gen. Insulation Co. v. Eckman Constr.*, 992 A.2d 613, 621 (N.H. 2010) (noting that "unjust enrichment generally does not form an independent basis for a cause of action"); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (Cal. Ct. App. 2006) ("There is no cause of action for unjust enrichment.").

lacks an adequate remedy at law to bring an unjust enrichment claim.[9]

Accordingly, Plaintiffs cannot maintain a nationwide unjust enrichment claim.

### 4. Overbroad

Next, P&G argues that Plaintiffs' class claims should be stricken because they are overbroad. A proposed class is facially "overbroad if it includes significant numbers of consumers who have not suffered any injury or harm." *Loreto v. The Procter & Gamble Co.*, No. 1:09cv815, 2013 U.S. Dist. LEXIS 162752, at *12 (S.D. Ohio Nov. 15, 2013) (the proposed class included all New Jersey residents who purchased the products, but the majority of consumers who purchased the products did not have Article III standing because they did not suffer an injury that was causally connected to the statement that Vitamin C "won't cure a cold, but…can help blunt its effects.").[10]

Overbroad classes violate standing requirements under Article III of the United States Constitution. Rule 23 must be interpreted consistently with Article III. *Amchem Prods., Inc.*, 521 U.S. at 613. An individual has Article III standing only if he suffered an injury-in-fact that is causally connected to a defendant's alleged wrongdoing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). While individual class members do not

---

[9] *See, e.g., Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 492 (Ariz. Ct. App. 2002); *Sean O'Kane A.I.A. Architect, P.C. v. Puljic*, 87 A.3d 1124, 1132 (Conn. App. Ct. 2014); *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005); *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996); *Infowise Sol., Inc. v. Microstrategy Inc.*, No. 3:04cv553-N, 2005 U.S. Dist. LEXIS 22030, at 22-23 (N.D. Tex. Sept. 29, 2005); *Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 991 P.2d 1126, 1134 (Wash. 2000).

[10] *See also McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001) (a class is overbroad where it "would include members who have not suffered harm at the hands of Defendant and are not at risk to suffer such harm.").

have to submit evidence of personal standing, a class cannot be certified if any members in the class would lack Article III standing. *Amchem Prods*, 521 U.S. 591, 612-13 (instructing district courts to be "mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints").

Plaintiffs' proposed classes and subclasses are overbroad because they would include millions of consumers who suffered no injury and thus have no standing to bring claims or recover on them. "[T]he only way to distinguish between the two sets of individuals is to engage in individualized fact-finding," which "makes the…class definition unsatisfactory." *Romberio*, 385 F. App'x at 431. Plaintiffs seek to represent a nationwide class and 44 state subclasses consisting of anyone who purchased Old Spice deodorant for their own use. (Doc. 8 at ¶¶ 46-53). Plaintiffs do not allege that all of these consumers suffered irritation or other injury from using Old Spice, nor do they allege that Old Spice failed to work properly for all members of the proposed classes. While possibly tens of millions of consumers fit Plaintiffs' class definitions, Plaintiffs allege that there are only "hundreds, if not thousands, of consumers damages by Defendant's actions and product." (*Id.* at ¶ 22).[11]

In *Loreto*, plaintiffs brought false advertising claims on behalf of all New Jersey residents who purchased certain products, alleging that P&G falsely stated that the

---

[11] Plaintiffs maintain that if the class definition needs to be adjusted, they should be given an opportunity to do so. *Brown v. Hain Celestial Group, Inc.*, No. C 11-03082 LB, 2014 U.S. Dist. LEXIS 162038, at *17 (N.D. Cal. 2014) ([I]t is an unremarkable feature of class actions that class definitions are refined to reflect the developing realities of a given suit, courts regularly allow class definitions to be adjusted due to the course of a lawsuit).

products would "blunt…effects" of a cold.  2013 U.S. Dist. LEXIS 162752 at 2, 10.  The

court struck the plaintiffs' class allegations because "only a few thousand individuals out

of millions of purchasers were ever exposed to the 'blunt its effects' statement."  *Id.* at

12-13 (noting that less than 0.25% of all purchasers were exposed to statement).

Similarly, here, since the class would consist primarily of uninjured class members,

Plaintiffs' class allegations are stricken.

### 5.  *Rule 23(a)'s Typicality, Adequacy, and Commonality Requirements*

P&G also claims that Plaintiffs' class claims should be stricken because they do

not comply with Rule 23(a)'s requirements.  Rule 23 governs class actions brought in

federal courts.  To obtain class certification a plaintiff must meet all of the following

prerequisites of Rule 23(a): (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims

or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the

class.  *Pilgrim*, 660 F.3d at 945.  *See also* Rule 23(a) (requiring numerosity,

commonality, typicality, and adequacy).  Once the Rule 23(a) requirements are satisfied,

a party seeking class certification must also show that the proposed class is maintainable

under one of the three provisions of Rule 23(b).

### a.  Commonality

Rule 23(a) requires that a plaintiff seeking to certify a class show that "there are

questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality

requires the plaintiff to demonstrate that the class members "have suffered the same

18

injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). For the reasons stated *supra* in Section III.A.1-2, Plaintiffs are not capable of showing a common class-wide injury.

### b. Typicality

Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Where class members' claims turn on individual permutations that "varied from person to person," the Sixth Circuit has made clear that the claims of the named plaintiffs are not typical. *See, e.g., Romberio*, 385 F. App'x at 431 (typicality lacking "[w]here a class definition encompasses many individuals who have no claim at all to the relief requested").

Plaintiffs allege that their claims "are typical of the claims of the Class," and that "Plaintiffs' and Class members' claims … arise from a common course of conduct, and pattern and practice by P&G and are based on the same legal theories." (Doc. 8 at ¶ 24). These conclusory allegations do not suffice. As discussed *supra* in Section III.A.1-2, each member of the proposed class must prove individual facts under widely varying legal standards. Proof of causation and other elements for one named plaintiff will not establish that other class members are entitled to relief. *Jones v. Allercare, Inc.*, 203 F.R.D. 290, 306 (N.D. Ohio 2001) ("Each plaintiff's claim is depend[e]nt on his or her sensitivity to the products and the nature of his or her exposure and alleged reaction."). Thus, even if the named plaintiffs establish their individual claims, the claims of the rest of the proposed class will not be proven. *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir.

1998) ("A named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.").

   While Plaintiffs allege that they have suffered physical injury, they have conceded that tens of millions of putative class members experienced no physical harm from Old Spice deodorants.  Thus, their claims cannot be "typical" of uninjured consumers.  Moreover, while Plaintiffs assert that they have alleged identical use of identical products and a common course of conduct, the amended complaint alleges the use of thirteen different products and a list of many differing physical conditions.  *See Am. Med. Sys.*, 75 F.3d at 1082 ("[W]e know from the amended complaint that each plaintiff used a different model, and each experienced a distinct difficulty…These allegations fail to establish a claim typical to each other, let alone a class.").  While Plaintiffs emphasize that they allege an injury affecting only one part of the body (the armpit), they cannot avoid the variety of conditions that they have pled or the causation issues that inevitably arise in the personal injury context.  Because individual consumer's claims "depend on individual facts, the typicality requirement is not met." *Jones*, 203 F.R.D. at 301 (finding typicality requirement not met because "each animal will have been injured in different ways and to different degrees by Blockade").

### c.  Adequacy

   With respect to adequacy, Courts must consider: "(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified

counsel." *O'Donnell v. Fid. Am. Life Ins. Co.*, No. 2:14cv1071, 2016 U.S. Dist. LEXIS 51658, at *23 (S.D. Ohio Apr. 18, 2016).

Class actions involving personal injury claims generally do not meet the adequacy requirement. *Amchem Prods.*, 521 U.S. at 626 n. 20 (in personal injury actions, finding class representatives inadequate in part because "currently injured" and "exposure-only" plaintiffs have different interests in the structure of settlement). The adequacy requirement "tends to merge" with typicality and commonality, each of which "serve as guideposts for determining" whether the class action is appropriate. *Id.* Here, Plaintiffs are not adequate representatives because they do not "possess the same interest and suffer the same injury" as the varied individual members of the class. *Id.* at 625-26. The named plaintiffs with "diverse medical conditions" cannot act "on behalf of a single giant class" because they are not "aligned" with the individual class members, *id.* at 626, and lack "incentives" to vindicate the disparate claims and injuries of other differently-situated class members. *A. Med. Sys.*, 75 F.3d at 1083.

### 6. *Rule 23(b)*

Plaintiffs must also establish that a class action is maintainable under one of the three prongs of Rule 23(b). P&G argues that Plaintiffs cannot maintain a class under 23(b)(1), (b)(2), or (b)(3).

### a. **Rule 23(b)(1)**

Rule 23(b)(1) certification is permitted when separate actions by individual class members would create a risk of either: (A) "inconsistent or varying adjudications…that would establish incompatible standards of conduct for the party opposing the class"; or

(B) individual adjudications "would be dispositive of the interest of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). Neither scenario applies here.

The amended complaint does not allege that P&G would have to employ "incompatible standards of conduct," if individual actions were filed in this case. Fed. R. Civ. P. 23(b)(1)(A). That risk "is low when a party seeks compensatory damages." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1195 (11th Cir. 2009). Rule 23(b)(1)(A) certification "is not appropriate simply because 'some plaintiffs may be successful in their suits against a defendant while others may not.'" *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618, 633 (6th Cir. 2011).

There is also no risk that individual adjudications will prejudice non-parties' ability to protect their interests. "The traditional and most common use" of such class actions is in "'limited fund' cases where claims are aggregated against a res or preexisting fund insufficient to satisfy all claims." *In re Telectronics Pacing Sys.*, 221 F.3d 870, 877 (6th Cir. 2000). The amended complaint does not allege that a limited fund might be warranted, or that as a practical matter, the adjudications of some individuals' claims would impair others. *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 293 (N.D. Ohio Sept. 28, 2007) (denying certification under Rule 23(b)(1)(B) where there was no limited fund, Defendants appeared to have sufficient resources, and it was "difficult to imagine an injunction granted to one potential class member would harm other potential class members").

Plaintiffs' allegations are typical consumer and personal injury claims which turn on the merits of each individual case and can be redressed by monetary damages. Because the "primary remedy" sought by Plaintiffs is monetary damages, and each individual class member's claims can be resolved individually, certification under Rule 23(b)(1)(A) is inappropriate. *Babineau*, 576 F.3d at 1195.

### b.  Rule 23(b)(2)

With respect to Rule 23(b)(2), Plaintiffs contend that their claims for monetary relief qualify for certification because the monetary relief sought is "'incidental' to injunctive relief." However, such incidental monetary relief is enough only where such relief "flow[ed] directly from liability to the class as a whole," *Dukes*, 131 S. Ct. at 2559 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)), and not "when each class member would be entitled to an individualized award of monetary damages." *Id.* at 2558. Since Plaintiffs seek individualized monetary damages, Rule 23(b)(2) certification is foreclosed by *Dukes*. Consistent with the focus of Rule 23(b)(2), "[c]lass certification under Rule 23(b)(2) is proper only when the primary relief sought is declaratory or injunctive." *Grovatt v. St. Jude Med. Ctr.*, 425 F.3d 1116, 1121 (8th Cir. 2005). Rule 23(b)(2) classes also must be "cohesive." *Romberio*, 385 F. App'x at 433.

None of the cases cited by Plaintiffs, all of which predate *Dukes*, support the proposition that *Dukes* permits Rule 23(b)(2) certification by "seeking declaratory and injunctive relief only," and "eliminate[ing] the individualized damage inquiries." *Coleman v. GM Acceptance Corp.*, 220 F.R.D. 64, 94 (M.D. Tenn. 2004). For example,

the *Cervantes* case is no longer good law—that court applied the more permissive

"predominance test," in a Title VII class action, and relied on the principle that back pay

is a form of "equitable relief," all of which is now precluded by *Dukes*. *Cervantes v.*

*Sugar Creek Packaging Co.*, 210 F.R.D. 611, 628 (S.D. Ohio 2002).

### c. Rule 23(b)(3)

Plaintiffs seek certification primarily under Rule 23(b)(3). However, the

manageability issues presented by the nationwide class and forty-four state subclasses

preclude a Rule 23(b)(3) class. *In re Bridgestone/Firestone Tires Products Liab. Litig.*,

288 F.3d 1012, 1018-19, 1021 (7th Cir. 2002) (reversing class certification where

personal injury litigation was "not manageable" as a "single nationwide class" because

claims "must be adjudicated under the law of so many jurisdictions," or "even on a

statewide basis" because of individual questions of fact).

As the Sixth Circuit has explained: "where no one set of operative facts establishes

liability, no single proximate cause equally applies to each potential class member and

each defendant, and individual issues outnumber common issues, the district court should

properly question the appropriateness of a class action for resolving the controversy."

*Am. Med Sys.* 75 F.3d at 1084. Rule 23(b)(3) is designed to "cover cases in which a class

action would achieve economies of time, effort, and expense, and promote uniformity of

decision as to persons similarly situated." *Amchem Prods.*, 521 U.S. at 615. Those

economies are lost where, as here, putative class members were "exposed to

different…products, for different amounts of time, in different ways, and over different

periods" and that those "disparate issues make class treatment inappropriate." *Barnes v. American Tobacoo Co.*, 161 F.3d 127, 143 (3d Cir. 1998).

Accordingly, based on the absence of alleged facts to support a putative class under Rule 23(b)(1), (b)(2), or (b)(3), and based on the individualized issues posed by Plaintiffs' demand for monetary damages, no class is maintainable.

### B. Motion to Dismiss

Next, P&G claims that several counts in the amended complaint are deficient as a matter of law and should be dismissed for failure to state a claim.

### 1. *Magnusson-Moss Warranty Claim*

Plaintiffs seek to assert a claim on behalf of a nationwide class under the Magnusson-Moss Warranty Act ("MMWA"). (Doc. 8 at ¶¶ 45-61). To state a breach of warranty claim under the MMWA, a plaintiff must allege that: (1) the item at issue was subject to a warranty; (2) the item did not conform to the warranty; (3) the seller was given a reasonable opportunity to cure and defects; and (4) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts. *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005). "In determining whether or not a seller is given a reasonable amount of time or a reasonable number of attempts to cure a defect, the MMWA contemplates that a seller 'will be given at least two chances to remedy an alleged defect.'" *Id.*

Plaintiffs assert that P&G is "on notice" of the alleged defects, and that any further

notice "would have been futile."[12]  Allegations that P&G was aware of the products'

defects does not satisfy the statute's strict requirements.  First, the Sixth Circuit has

firmly rejected the invitation to carve out a "futility" exception to the MMWA's plain

text as a substitute for affording an "opportunity to cure."  *Kuns v. Ford Motor Co.*, 543

F. App'x 572, 576 (6th Cir. 2013).  The MMWA states that an action may not be brought

"unless the [warrantor]…is afforded a reasonable opportunity to cure."  15 U.S.C.

§ 2310(e).  That language is "mandatory."  *Bearden v. Honeywell Int'l, Inc.*, 720 F.

Supp.2d 932, 936-37 (M.D. Tenn. 2010) (striking MMWA class allegations "[b]ecause

the plaintiffs here failed to give proper notice, as required by statute").  The court found

no basis for waiving "this statutory requirement" simply because "a plaintiff subjectively

determines that demand would be futile and does not so much as request the seller" cure

the alleged defect.  *Kuns*, 543 F. App'x at 576.  The same argument fails here.  *See, e.g.,*

*Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp.2d 1123, 1144 (N.D. Cal. 2010)

("Logically, notice that a defect has manifested and an opportunity to cure are required to

state a claim under the MMWA, even if the manufacturer knows of an alleged defect at

the time of sale.").

   Accordingly, Plaintiffs' MMWA claim fails as a matter of law.

---

[12] Plaintiffs suggest that one or more named Plaintiffs complained to P&G about Old Spice products prior to this action, but the statements are too vague and conclusory to adequately allege the statutorily-required notice and opportunity to cure.  (Doc. 8 at ¶ 56) ("P&G was on notice and/or had actual knowledge, of the problems with Old Spice Deodorant products based on the complaints it received directly from Plaintiffs and Class members")).  The amended complaint does not indicate which Plaintiffs made these complaints, how and when they were made, or what they addressed.  *See, e.g., in re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. MDL 1703, 2012 U.S. Dist. LEXIS 39561, at *14-15 (N.D. Ill. Mar. 22, 2012) (dismissing MMWA claim for failure to plead an opportunity to cure where complaining letter sent by plaintiff to defendant did not meet the requirement).

## 2. *Breach of Express Warranty*

Next, P&G maintains that Plaintiffs fail to allege any "specific representations about the product at issue," as they must to survive a motion to dismiss. *Davisson v. Ford Motor Co.*, No. 2:13cv456, 2014 U.S. Dist. LEXIS 122673, at *26 (S.D. Ohio Sept. 3, 2014). "[R]epeated but surpassingly vague references to [defendant's] advertisements and promotional materials" do not rescue their claim. *Id.* Courts in this district have dismissed express warranty claims where plaintiffs "cannot point to any [] specific language of any promotion or advertisement, much less one that created an express warranty obligation on the part of [the defendant]," even where "Plaintiffs insist that they saw or heard … advertisements that touted the safety [and] reliability" of a product. *Id.*

Plaintiffs allege, without further detail, the existence of "promises and affirmations of fact made by P&G on the products packaging and through marketing and advertising." (Doc. 8 at ¶ 30). However, Plaintiffs fail to allege that any particular representations actually appear on Old Spice products, nor do they identify any "marketing" or "advertising" materials associated with Old Spice. The only representations that Plaintiffs identify as "express warranties" are statements about P&G's formulations of perfumes that appear in a document on a general P&G product safety website. (*Id.* at ¶ 31). Plaintiffs do not allege that this document discusses Old Spice deodorants, that putative class members ever saw or read this document, or that the document formed the basis of the bargain when putative class members purchased Old Spice deodorants in retail locations. Accordingly, these alleged statements do not amount to an express warranty as to Old Spice deodorant products. Ohio Rev. Code § 1302.26(A)(1)

(requiring express warranty to "relate[] to" product and become part of "the basis of the bargain").

Therefore, Plaintiffs' claim for breach of express warranty fails as a matter of law.

### 3. *Injunctive Relief*

Plaintiffs make various demands for injunctive relief. The plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Article III's "injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016). Just like other plaintiffs, named plaintiffs in a class action must meet this standing requirement. *Id.* at n. 6 ("That a suit may be a class action…adds nothing to the question of standing…"). To allege "concrete" injury when seeking injunctive relief, plaintiffs must allege that they face "actual present harm or a significant possibility of future harm." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). Under Article III, "actual present harm" affords a plaintiff standing to seek only prospective injunctive relief that is likely to redress that harm. *Id.* at 832 ("[T]here must be a substantial likelihood that the relief requested will redress or prevent Grendell's injury.").

Any alleged lingering physical effects stemming from Plaintiffs' past use of Old Spice products will not be redressed by the injunctive relief Plaintiffs seek. The "actual present harm" Plaintiffs identify is that of ongoing "burning, rashes, irritation, scarring, discoloration, scabbing, peeling skin, and/or other injuries." (Doc. 8 at ¶¶ 3A-PP). However, Plaintiffs' requested injunctive relief is designed to prevent the possibility of

future harm, which Plaintiffs effectively concede they do not allege. (*Id.* at ¶ 177) (seeking to "enjoin[] [P&G] from continuing … unlawful, deceptive, fraudulent, and unfair business and/or consumer practices").

Plaintiffs in this case do not and cannot allege that they face "a significant possibility of future harm." *Grendell*, 252 F.3d at 832. On the contrary, Plaintiffs affirmatively allege that they "discarded or ceased using the Deodorants because of adverse health effects." (Doc. 8 at ¶ 1). Plaintiffs cannot maintain that they are at significant risk of purchasing the allegedly offending products in light of their allegations that these products caused them "burning, rashes, irritation, scarring, discoloration, scabbing, peeling skin, and/or other injury," and that they stopped using the products as a result of these injuries. (*Id.* at ¶ 3).

In the context of a consumer class action, named plaintiffs lack standing to seek injunctive relief when they do not allege that they would purchase the product again. *Marty v. Anheuser-Busch Cos. LLC*, 43 F. Supp. 3d 1333, 1357 (S.D. Fla. 2014) (no standing to seek injunctive relief because "the Amended Complaint is devoid of any allegations that the plaintiffs would purchase [the product] in the future"). Here, because Plaintiffs are aware of their purported injuries and attribute those injuries to Old Spice deodorants, it is not plausible that Plaintiffs would purchase the product again. *See, e.g., Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. Aug. 26, 2014) (finding that plaintiff failed to allege "a sufficient future injury to establish standing to seert her claims for injunctive relief" because she did not allege that she was

likely to purchase the products at issue in the litigation again).[13]

Plaintiffs maintain that they have provided photographic evidence of a present actual harm. Since "present actual harm" is one of the alternatives available under the final prong of a *Grendell* analysis, Plaintiffs argue that they need not demonstrate "the possibility of future harm" to establish Article III standing. However, "actual present harm" affords a plaintiff standing to seek only prospective injunctive relief that is likely to redress harm. *Grendell*, 252 F.3d at 832. Any physical effects stemming from Plaintiffs' past use of Old Spice products will not be redressed by the injunctive relief Plaintiffs seek. While the "actual present harm" is ongoing "burning, rashes, irritation, scarring, discoloration, scabbing, peeling skin, and/or other injuries" (Doc. 8 at ¶¶ 3A-PP), Plaintiffs' requested injunctive relief is designed to prevent the possibility of future harm, which Plaintiffs concede they do not allege (*Id.* at ¶ 177).

Accordingly, Plaintiffs' prayers for prospective injunctive relief fail as a matter of law.

### 4. Unjust Enrichment

P&G maintains that Plaintiffs' unjust enrichment claim fails because it: (1) arises out of contract; (2) P&G is a remote seller; and (3) California does not provide for unjust enrichment.[14]

---

[13] *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 969 (N.D. Cal. 2014) (finding that plaintiff "lacks standing to assert a claim for prospective injunctive relief, as she has indicated she has no intention of purchasing the same … product in the future").

[14] Should the Court be inclined to dismiss the unjust enrichment claim, Plaintiffs request leave to amend in order to "marry the exemplar states with their corresponding state specific subclasses" identified in the amended complaint. (Doc. 8 at ¶ 17).

Plaintiffs argue that a claim for unjust enrichment can be plead in the alternative to a contract claim. *Teknol, Inc. v. Buechel*, No. C-3-98-416, 1999 U.S. Dist. LEXIS 22017, at *10 (S.D. Ohio Aug. 9, 1999) (although a plaintiff may not recover on an unjust enrichment claim that is coextensive with his claim for breach of contract, a Plaintiff may, in accordance with Fed. R. Civ. P. 8e(2), set forth both causes of action as alternative theories in his or her complaint). Although some courts permit alternative pleading, others in this district have dismissed unjust enrichment and quasi-contract claims "even though Fed. R. Civ. P. 8(e)(2) permits alternative pleading, because the Federal Rules of Civil Procedure do not alter substantive rights among the parties" established by state law. *See, e.g., Amarado Oil Co. v. Davis*, No. 5:12cv627, 2013 U.S. Dist. LEXIS 133571, at *31-35 (N.D. Ohio Sept. 17, 2013) (dismissing unjust enrichment claim where a written contract existed).[15]

Moreover, the unjust enrichment claim is precluded in many states because either P&G is a remote seller or the unjust enrichment is not a recognized cause of action. Accordingly, Plaintiffs' unjust enrichment claim is foreclosed on multiple grounds.

## IV.    CONCLUSION

For these reasons, Defendant P&G's motion to strike and motion to dismiss (Doc. 11) is **GRANTED**. However, at this stage in the litigation the Court affords Plaintiffs the opportunity to cure their deficiencies. Accordingly, in an effort to adjudicate the case on the merits, Plaintiffs are granted leave to amend the class allegations and disputed claims.

---

[15] *See also Klusty v. Taco Bell Corp.*, 909 F. Supp. 516, 521 (S.D. Ohio 1995).

Failure to file a motion to amend within **21 days** of the date of this Order will result in the class allegations being stricken and specified claims being dismissed as explained in this Order.

      **IT IS SO ORDERED**.

Date:  10/4/16
                                      *s/ Timothy S. Black*
                                    Timothy S. Black
                                    United States District Judge